UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN DOE1 and JANE DOE1, *on behalf of their minor child* B.G., and JOHN DOE2 and JANE DOE2, *on behalf of their minor child* A.R., | * * * * * | |
| Plaintiffs, | * | |
| v. | * * | Civil Action No. 17-cv-11653-ADB |
| BOSTON PUBLIC SCHOOLS, CITY OF BOSTON, TOMMY CHANG, MARTIN J. WALSH, and AYLA GAVINS, | * * * * | |
| Defendants. | | |

## MEMORANDUM AND ORDER ON MOTIONS TO DISMISS

BURROUGHS, D.J.

Plaintiffs John Doe1 and Jane Doe1, on behalf of their minor child B.G., and John Doe2 and Jane Doe2, on behalf of their minor child A.R., allege that Defendants Boston Public Schools, City of Boston (together with Boston Public Schools, the "Municipal Defendants"), Thomas Chang, Martin Walsh, and Ayla Gavins failed to take sufficient steps to protect B.G. and A.R. from sexual and physical assaults committed by another student, A.J., that occurred at the Mission Hill K-8 School. [See ECF No. 28 (hereinafter "Amended Complaint" or "Am. Compl.")]. Plaintiffs assert violations of 42 U.S.C. § 1983, the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11I, and Title IX, 20 U.S.C. § 1681 and claims for negligence and loss of consortium. Id. at 6–9. Defendants have separately moved to dismiss. [ECF Nos. 29, 31, 33, 35]. For the reasons set forth below, the motions are GRANTED IN PART and DENIED IN PART.

## I.    BACKGROUND

The following facts are drawn from the Amended Complaint, the well-pleaded allegations of which are taken as true for purposes of evaluating Defendants' motion to dismiss. See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).

Plaintiffs Mr. Doe1 and Ms. Doe1 reside in Boston, Massachusetts with their daughter, B.G.  Am. Compl. ¶ 1.  Plaintiffs Mr. Doe2 and Ms. Doe2 live in West Roxbury, Massachusetts with their daughter, A.R.  Id. ¶ 2.  Defendant City of Boston oversees the operation of Defendant Boston Public Schools.  Id. ¶ 4.  Defendant Martin Walsh is the Mayor of Boston, and during the time period relevant to the Amended Complaint, Defendant Tommy Chang was the Superintendent of the Boston Public Schools and Defendant Ayla Gavins was the principal of the Mission Hill K-8 School.  Id. ¶¶ 5–7.

Plaintiffs allege that B.G., A.R., and others were sexually assaulted by A.J., another student, when they attended the Mission Hill K-8 School.  Some time before October 2014, A.J. sexually assaulted two fellow students who are not plaintiffs in this action, including by forcibly exposing their genitals and kissing them in their genital areas.  Id. ¶ 14.  When school staff became aware of these sexual assaults, they took no actions to monitor A.J., expel A.J., or warn other staff about A.J.'s actions.  Id. ¶ 15.

During or after October 2014, A.J. sexually assaulted B.G., who was in his class at that time, by digitally penetrating her.  Id. ¶ 16, 21.  When school staff became aware of A.J.'s assault on B.G., a teacher filed a report with the Massachusetts Department of Children & Families ("DCF") pursuant to mandated reporter obligations under Mass. Gen. Laws ch. 119, § 51A ("51A Report").  Id. ¶ 16.  The Municipal Defendants' practice and procedure was to discourage and delay the filing of 51A Reports, and school staff were not trained in the proper

manner for filing such Reports.  Id. ¶ 19.  Consistent with this practice, Gavins discouraged staff

from filing the mandatory 51A Reports to DCF about sexual assaults committed by A.J. and

other students, and the teacher who filed the 51A Report concerning B.G.'s assault was fired in

retaliation.  Id. ¶ 18.

For several months following the sexual assault by A.J., B.G. remained in the same

classroom as him and lived in fear of being assaulted again.  Id. ¶ 21.  As a result of her assault,

B.G. suffered physical injuries and severe emotional distress.  Id. ¶ 29.  In addition to B.G.,

during the 2014-2015 school year, A.J. sexually assaulted four other female students and one

other male student at the Mission Hill K-8 School.  Id. ¶ 20.  These assaults were reported to

school staff.  Id.

During the 2015-2016 school year, A.J. groped A.R. in her breast and genital areas; he

also tried to kiss A.R. and threatened her with physical violence if she refused.  Id. ¶ 24.  School

staff witnessed these assaults and reported them to Gavins.  Id.  A.J. also made A.R. expose her

genitals to him by threatening her with physical violence.  Id.  This assault was also reported to

school staff, including Gavins.  Id.

In September 2016, after A.R. was assigned to sit next to A.J. in class, school staff again

witnessed A.J. repeatedly assaulting A.R. and reported the incidents to Gavins.  Id. ¶ 25.  These

assaults included A.J. forcibly kissing A.R. and touching her chest.  Id.  Around the same time, a

teacher witnessed A.J. sexually assault another student by touching her genitals and reported that

incident to Gavins.  Id.  In October 2016, while A.R. played on the playground at the Mission

Hill K-8 School, A.J. grabbed her genitals.  Id. ¶ 26.  During the 2015-2016 school year, A.R.'s

parents asked school staff for a safety plan for A.R., but Gavins instructed staff not to provide a

safety plan or otherwise respond to the requests.  Id. ¶ 23.  As a result of the assaults by A.J.,

A.R. suffered physical injuries and severe emotional distress.  Id. ¶ 29.

On June 15, 2017, Plaintiffs filed a complaint in the Massachusetts Superior Court for Suffolk County.  [ECF No. 1-1].  On September 1, 2017, Defendants removed the action to this Court.  [ECF No. 1].  Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on September 28, 2017.  [ECF Nos. 9, 11, 13, 15, 17].  On July 6, 2018, the Court granted Defendants' motions to dismiss without prejudice and allowed Plaintiffs leave to amend.  [ECF No. 25].  On August 13, 2018, Plaintiffs filed the Amended Complaint, and on August 24, 2018, Defendants moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  [ECF Nos. 28, 29, 31, 33, 35].  Plaintiffs filed oppositions to the Municipal Defendants' and Gavins' motions on September 21, 2018.  [ECF Nos. 39, 40].

## II.    STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the light most favorable to the plaintiff.  U.S. ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011).  While detailed factual allegations are not required, the complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and it must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotations and citations omitted).  The facts alleged, taken together, must "state a claim to relief that is plausible on its face."  A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Twombly, 550 U.S. at 570).  "A claim is facially plausible if supported by 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Eldredge v. Town of

Falmouth, 662 F.3d 100, 104 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

When assessing the sufficiency of a complaint, the Court first "separate[s] the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Maddox, 732 F.3d at 80 (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Next, the Court "determine[s] whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224). "[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Twombly, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," however, a claim may be dismissed. Iqbal, 556 U.S. at 679.

## III.     DISCUSSION

### A.     42 U.S.C. § 1983 Claims (Count I, Against Defendant Gavins, and Count II, Against the Municipal Defendants)

"[T]o state a claim under § 1983, a plaintiff must allege (1) the violation of a right protected by the Constitution or laws of the United States and (2) that the perpetrator of the violation was acting under color of law." Cruz–Erazo v. Rivera-Montanez, 212 F.3d 617, 621 (1st Cir. 2000). Defendants do not contest that they acted under color of law. Rather, Defendants argue that Plaintiffs have failed to allege the violation of a constitutional right, that Gavins is protected by qualified immunity, and that Plaintiffs have failed to state a Monell claim against the Municipal Defendants. [ECF No. 30 at 4–8; ECF No. 32 at 4–7]. Plaintiffs respond that Defendants can be held liable under a state-created danger theory for the deprivations of

B.G.'s and A.R.'s right to be free from intrusions into their bodily integrity and their right to receive a public education, that Gavins is not entitled to qualified immunity because those constitutional rights are clearly established, and that the Municipal Defendants can be held liable for policies or customs that caused the constitutional violations.  [ECF No. 39 at 4–8; ECF No. 40 at 4–8].

        1.    <u>Violation of Right to Bodily Integrity</u>

The Amended Complaint alleges that Gavins and the Municipal Defendants violated the Constitution by depriving B.G. and A.R. of their liberty interest in bodily integrity.  Am. Compl. ¶¶ 35, 43.  "In order to establish a substantive due process claim, the plaintiff must first show a deprivation of a protected interest in life, liberty, or property."  <u>Rivera v. Rhode Island</u>, 402 F.3d 27, 33–34 (1st Cir. 2005).  Here, Plaintiffs claim that A.J., and not Defendants, was B.G.'s and A.R.'s abuser.  As a general matter, a state's "failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."  <u>DeShaney v. Winnebago Cty. Dep't of Soc. Servs.</u>, 489 U.S. 189, 197 (1989).  "That is because the purpose of the Due Process Clause is to protect the people from the state, not to ensure that the state protects them from each other."  <u>Rivera</u>, 402 F.3d at 34.  However, the Supreme Court in <u>DeShaney</u> "suggested, but never expressly recognized, the possibility that when the state creates the danger to an individual, an affirmative duty to protect might arise."  <u>Id.</u> at 34–35 (citing <u>DeShaney</u>, 489 U.S. at 201).  While at least eight circuits "have recognized the existence of the state-created danger theory," and the First Circuit "has discussed the possible existence" of the theory, the First Circuit has "never found it applicable to any specific set of facts."  <u>Irish v. Maine</u>, 849 F.3d 521, 526 (1st Cir. 2017).  Plaintiffs' claims rely on this state-created danger theory.

To prevail on a claim based on the state-created danger theory, Plaintiffs must prove "not only that a government official's action proximately caused his injuries, but also that these

actions shock the court's conscience." Doe v. Town of Wayland, 179 F. Supp. 3d 155, 165 (D. Mass. 2016) (citing Lockhart–Bembery v. Sauro, 498 F.3d 69, 77 (1st Cir. 2007)). "The burden to show state action that shocks the conscience is extremely high, requiring stunning evidence of arbitrariness and caprice that extends beyond mere violations of state law, even resulting from bad faith to something more egregious and more extreme." Id. (quoting Melendez–Garcia v. Sanchez, 629 F.3d 25, 37 (1st Cir. 2010)). "[W]hether behavior is conscience shocking varies with regard to the circumstances of the case," and thus, "[i]n situations where actors have an opportunity to reflect and make reasoned and rational decisions, deliberately indifferent behavior may suffice to 'shock the conscience.'" Rivera, 402 F.3d at 36 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 850–52 (1998)).

At this stage, the Court must take as true Plaintiffs' allegations that: before A.J. assaulted B.G., school staff knew that A.J. had previously sexually assaulted two other students at the school by forcibly exposing their genitals and kissing them in their genital areas but took no actions to ensure that A.J. would not sexually assault other students; on or after October 2014, A.J. sexually assaulted B.G. by digitally penetrating her; during the 2014-2015 school year, in addition to B.G., A.J. sexually assaulted four other female students and one male student, and these assaults were reported to school staff, including Gavins; during the 2015-2016 school year, school staff observed A.J. grope A.R. in her chest and genital areas and threaten A.R. with physical violence if she refused to kiss him; during the 2015-2016 school year, A.J. forced A.R. to expose her genitals to him by threatening her with physical violence if she refused, and this was reported to school staff; in September 2016, A.R. was assigned to sit next to A.J. and school staff witnessed A.J. forcibly kiss A.R. and touch her chest; around September 2016, a school teacher witnessed A.J. sexually assault another student by touching her genitals and reported this

to Gavins; and in October 2016, A.J. sexually assaulted A.R. by grabbing her genitals over her

clothes while on the playground.  Am. Compl. ¶¶ 14–17, 20–22, 24–26.  Further, the Court must

credit Plaintiffs' allegations that: at some point, a 51A Report of child abuse was filed by a

school teacher concerning A.J.'s sexual assault on B.G., but Gavins discouraged staff from filing

51A Reports about A.J.'s other assaults or the sexual assaults committed by other students; one

school teacher was fired in retaliation for filing a 51A Report about A.J.'s sexual assaults; staff

were not properly trained on filing 51A Reports, and the school's practice was to discourage and

delay the filing of 51A Reports concerning sexual assaults perpetuated by A.J. and other

students; and in response to A.R.'s parents' request for a safety plan for A.R., Gavins instructed

school staff not to provide one or otherwise respond to the request.  Id. ¶¶ 16, 18–19, 23.

        The Court finds that Plaintiffs have narrowly alleged sufficient facts to survive the

motions to dismiss their state-created danger claim.  First, although it is a very close question,

the Court can infer that by suppressing and delaying the filing of 51A Reports about A.J.'s

sexual assaults and firing a teacher in retaliation for filing such a Report, Defendants' actions left

B.G. and A.R. more vulnerable to A.J.'s assaults.  Under Massachusetts law, specified persons,

including school staff, must report allegations of child abuse to DCF if he or she "has reasonable

cause to believe that a child is suffering physical or emotional injury resulting from . . . abuse

inflicted upon him [or her] which causes harm or substantial risk of harm to the child's health or

welfare, including sexual abuse."  Mass. Gen. Laws ch. 119, § 51A(a).  Section 51A "imposes an

affirmative obligation to report when there is 'reasonable cause to believe' abuse or neglect has

taken place and sets a low threshold for what constitutes reasonable cause."  Doe v. Bradshaw,

203 F. Supp. 3d 168, 183 (D. Mass. 2016) (citation omitted).  Following the receipt of a 51A

Report, DCF must promptly investigate it, make a written finding of whether the suspected abuse

is substantiated, and "immediately report to the district attorney and local law enforcement authorities, a sexually exploited child."  Mass. Gen. Laws ch. 119, § 51B(a).

The affirmative acts of concealment and retaliation alleged in the Amended Complaint amount to more than just knowledge of A.J.'s assaults or a failure to intervene—by impeding DCF intervention, Gavins and other school officials plausibly enhanced the threat of harm to B.G. and A.R. and proximately caused their injuries.  Cf. Deshaney, 489 U.S. at 201 ("While the State may have been aware of the dangers that [minor plaintiff] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them."). Without question, the Amended Complaint lacks a number of crucial details, particularly concerning the origin, scope, and application of the practice regarding the delayed or suppressed filing of 51A Reports, the timing of events that should have triggered the filing of 51A Reports, the extent to which Defendants and other school staff knew about those events, and when they acquired that knowledge.  That being said, there is, just barely, sufficient factual detail to infer that, because school staff knew that A.J. committed sexual assaults on fellow school children before he harmed B.G. and A.R. and Gavins discouraged them from filing 51A Reports in connection with those incidents, the assaults on B.G. and A.R. by A.J. were a foreseeable and direct result of Defendants' actions.

Further, while it is an equally close question, the Court finds that Defendants' actions, as set forth in the Amended Complaint, shock the conscience.  As discussed supra, exactly what conduct will be conscious-shocking varies according to context, and deliberate indifference may suffice "where actors have an opportunity to reflect and make reasoned and rational decisions." J.R. v. Gloria, 593 F.3d 73, 80 (1st Cir. 2010) (citation omitted); see also Sanford v. Stiles, 456 F.3d 298, 309 (3d Cir. 2006) (noting that "[t]he level of culpability required to shock the

conscience increases as the time state actors have to deliberate decreases," and while "[i]n a 'hyperpressurized environment,' an intent to cause harm is usually required," deliberate indifference is sufficient "in cases where deliberation is possible and officials have the time to make 'unhurried judgments'" (footnotes omitted)).  In J.R. v. Gloria, 593 F.3d 73 (2010), the First Circuit considered whether social workers, by failing to prevent the minor plaintiffs from suffering sexual abuse in their foster homes, acted with deliberate indifference that amounted to conscience-shocking conduct, and used the following test: "state officials must have been at least aware of known or likely injuries or abuse and have chosen to ignore the danger to the child." Id. at 80 (citations omitted).

Given that A.J.'s alleged assaults were not sudden or isolated and school staff had an opportunity to reflect and make reasoned and rational decisions in response, the Court applies the same deliberate indifference framework that the First Circuit applied in J.R. v. Gloria to find that the Amended Complaint alleges conscience-shocking behavior by Defendants and other school staff.  Gavins and other school staff knew that A.J. assaulted two other students before he assaulted B.G. during the 2014-2015 school year.  In addition, they knew that that A.J. assaulted B.G. and five other students during the 2014-2015 school year before he assaulted A.R. during the 2015-2016 and 2016-2017 school years.  See Am. Compl. ¶¶ 14, 16, 20, 23–25.  Moreover, Gavins and other school staff were aware that B.G. and A.R. were specifically vulnerable to continued abuse by A.J. because they had witnessed or otherwise learned that A.J. assaulted B.G. and A.R.  See id. ¶¶ 16, 20, 23–25.  By discouraging and delaying the filing of 51A Reports in connection with A.J.'s sexual assaults and retaliating against a teacher who filed such a Report, officials chose to ignore the danger to B.G. and A.R. and aggravated their vulnerability.  In short, school officials' decision not to report known sexual assaults to DCF in accordance with

Massachusetts law despite knowing that elementary school-aged children (who are particularly vulnerable due to their age) had been repeatedly assaulted is sufficiently conscience-shocking to survive a motion to dismiss.

The Court cautions that where, as here, a private actor harmed B.G. and A.R., affirmative action (rather than inaction) by school officials is essential to its holding.[1] See Rivera, 402 F.3d at 36 ("[I]n a state creation of risk situation, where the ultimate harm is caused by a third party, 'courts must be careful to distinguish between conventional torts and constitutional violations, as well as between state inaction and action.'" (citation omitted)); Ramos-Pinero v. Puerto Rico, 453 F.3d 48, 55 n.9 (1st Cir. 2006) ("To the extent plaintiffs attempt to ground liability in the so-called 'state-created danger' theory, the absence of an affirmative act by the state in creating the danger is fatal to the claim."). "Failing to defuse a preexisting danger is not an affirmative act under the doctrine." Doe v. Berkeley Cty. Sch. Dist., 189 F. Supp. 3d 573, 577 (D.S.C. 2016) (collecting cases). If, following discovery, there is no evidence that school officials suppressed the filing of 51A Reports, retaliated against a teacher for filing such a Report, or committed any other affirmative act that enhanced the danger to which B.G. and A.R. were exposed, then the

---

[1] The Supreme Court and First Circuit have recognized a second exception to the general rule that a state has no due process obligation to protect individuals from private violence. "[I]n situations where a state creates a 'special relationship' because of 'the limitation which [the state] has imposed on [an individual's] freedom to act on his own behalf,' its subsequent failure to protect an individual may amount to a substantive due process violation." J.R. v. Gloria, 593 F.3d 73, 79 (1st Cir. 2010) (quoting Rivera v. Rhode Island, 402 F.3d 27, 34 (1st Cir.2005)); see also DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 200 (1989) ("The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf."). "As a general matter, courts have declined to find a 'special relationship' between a public school and its students," Thomas v. Town of Chelmsford, 267 F. Supp. 3d 279, 297 (D. Mass. 2017), although the First Circuit has recognized the possibility that "perhaps in narrow circumstances" a school or school employees might have a "'specific' duty" to render aid to a student in peril, Hasenfus v. LaJeunesse, 175 F.3d 68, 72 (1st Cir. 1999). Plaintiffs here do not rely on a "special relationship" theory and therefore must demonstrate affirmative action by school officials in order to establish a constitutional violation.

Court will revisit this finding on summary judgment.

2.    Violation of Right to Public Education

Plaintiffs also claim that the actions of Gavins and the Municipal Defendants deprived B.G. and A.R. of their right to a public education.  [ECF No. 39 at 7]; Am. Compl. ¶¶ 35, 43.  As Plaintiffs acknowledge, public education is not a fundamental right guaranteed by the Constitution.  [ECF No. 39 at 7]; see San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 35 (1973).  Although the Amended Complaint does not state the source of the constitutional right that Plaintiffs assert, in their opposition to Gavins' motion to dismiss, Plaintiffs clarify that they claim B.G. and A.R. were denied equal access to public education under the Fourteenth Amendment's Equal Protection Clause.  [ECF No. 39 at 7].

The Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  To state an equal protection claim, a plaintiff must allege that he or she "was treated differently from others similarly situated . . . based on impermissible considerations."  Clark v. Boscher, 514 F.3d 107, 114 (1st Cir. 2008) (quotation marks and citation omitted).  "The Supreme Court has held that differential treatment based on suspect classifications (race, national origin, religion, or alienage) is subject to strict scrutiny; differential treatment based on quasi-suspect classifications (gender or illegitimacy) is subject to intermediate scrutiny; and differential treatment based on all other classifications simply must survive a rational basis inquiry."  Pineiro v. Gemme, 937 F. Supp. 2d 161, 176 (D. Mass. 2013).  "This showing of disparate treatment is a 'threshold requirement' of any equal protection claim."  Lu v. Smith, No. 15-cv-14081-DJC, 2016 WL 4595206, at *3 (D. Mass. Sept. 2, 2016) (quoting Ayala-Sepulveda v. Municipality of San German, 671 F.3d 24, 32 (1st Cir. 2012)).

Plaintiffs here claim that "the sexual assaults on [B.G. and A.R.] resulted in invasion of

their bodily integrity, physical injuries, emotional distress, and humiliation" and that "these incidents transformed the school from a place of learning and safety into a nightmare where [B.G. and A.R.] lived in fear of being assaulted again and continued to relive their own traumatic experiences." [ECF No. 39 at 7]. Plaintiffs have provided no allegations that they were treated differently from others similarly situated, however, and the Amended Complaint is silent as to the treatment of others. For these reasons, without examining the extent to which a right to public education may be cognizable under Section 1983, Plaintiffs' equal protection claim must be dismissed.

### 3.    Qualified Immunity

Gavins argues that she is entitled to qualified immunity because her alleged conduct did not violate a clearly established statutory or constitutional right that a reasonable person would have known about. [ECF No. 32 at 6–7]. Plaintiffs respond that Gavins is not entitled to qualified immunity because the constitutional rights to bodily integrity and access to education are "beyond debate," and that any reasonable school administrator would understand that taking actions to prevent and delay the reporting of sexual assaults is a violation of those rights.[2] [ECF No. 39 at 8].

Qualified immunity protects public officials, in their individual capacity, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also White v. Pauly, 137 S. Ct. 548, 551 (2017) (similar); M.M.R.-Z. ex rel. Ramirez-Senda v. Puerto Rico, 528 F.3d 9, 12–13 (1st Cir. 2008) (noting that "qualified immunity does not apply to official capacity claims"). The qualified immunity

---

[2] As explained supra, Plaintiffs have failed to state a deprivation of a constitutional right to public education under the Fourteenth Amendment's Equal Protection Clause.

doctrine balances two interests: (1) "the need to hold public officials accountable when they exercise power irresponsibly" and (2) "the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Pearson v. Callahan, 555 U.S. 223, 231 (2009).

To determine whether a defendant is entitled to qualified immunity, the Court undertakes a two-step inquiry to determine: "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation."  Maldonado v. Fontanes, 568 F.3d 263, 268–69 (1st Cir. 2009) (citing Pearson, 555 U.S. at 232).  The "clearly established" prong has two sub-parts.  "The first sub-part requires the plaintiff to identify either 'controlling authority' or a 'consensus of cases of persuasive authority' sufficient to send a clear signal to a reasonable official that certain conduct falls short of the constitutional norm."  Alfano v. Lynch, 847 F.3d 71, 75 (1st Cir. 2017) (quoting Wilson v. Layne, 526 U.S. 603, 617 (1999)).  "The second sub-part asks whether an objectively reasonable official in the defendant's position would have known that his [or her] conduct violated that rule of law."  Id. (citing Wilson v. City of Bos., 421 F.3d 45, 57–58 (1st Cir. 2005)).

Plaintiff correctly points out that the right to bodily integrity is clearly established, and it is beyond dispute that, by October 2014, a consensus of persuasive authority clearly established that state officials could be held liable where they affirmatively and with deliberate indifference placed an individual in danger that he or she would not otherwise have faced.  See Kennedy v. City of Ridgefield, 439 F.3d 1055, 1061 n.1 (9th Cir. 2006) (collecting cases).  The Supreme Court, however, instructs that "'clearly established law' should not be defined 'at a high level of generality.'"  White, 137 S. Ct. at 552 (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742

(2011)); Mullinex v. Luna, 136 S. Ct. 305, 308 (2015) (holding that the "dispositive question is 'whether the violative nature of *particular* conduct is clearly established'" (quoting al-Kidd, 563 U.S. at 742)). While qualified immunity does not require "a case directly on point" for law to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." Mullenix, 136 S. Ct. at 308 (citation omitted); see also McKenney v. Mangino, 873 F.3d 75, 82 (1st Cir. 2017) ("To be sure, 'the clearly established law' employed in a qualified immunity analysis 'must be particularized to the facts of the case.'" (quoting White, 137 S. Ct. at 552)).

As discussed supra, the constitutional violation adequately pleaded is that, by delaying or suppressing the filing of 51A Reports concerning sexual assaults perpetuated on minor children, Gavins was deliberately indifferent to acts of sexual assault perpetrated on B.G. and A.R. by A.J. in violation of their substantive due process right to bodily integrity. Gavins would not be entitled to qualified immunity if a reasonable school principal, between October 2014 and October 2016, would have known that delaying or suppressing the filing of 51A Reports was deliberately indifferent in the situations that she encountered. The Court finds that, irrespective of whether the conduct alleged is reprehensible or the harm tragic, Plaintiffs have not met their burden to show that the existing case law clearly established that the conduct at issue violated B.G.'s and A.R.'s constitutional rights. See Rivera-Corraliza v. Morales, 794 F.3d 208, 215 (1st Cir. 2015) ("[W]hen a defendant invokes qualified immunity, the burden is on the plaintiff to show the inapplicability of the defense." (citing Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 228 (1st Cir. 1992)). While "officials can still be on notice that their conduct violates established law even in novel factual circumstances," Hope v. Pelzer, 536 U.S. 730, 741 (2002), as discussed supra, the First Circuit has never found the state-created danger theory applicable to

any specific set of facts, let alone in the context of peer-on-peer harassment.  Further, Plaintiffs have not set forth, and this Court has been unable to identify, a consensus of persuasive authority establishing, beyond debate, that Gavins' actions were clearly unconstitutional at the time that B.G. and A.R. were victimized.  Thus, although common sense and professional ethics might seem sufficient to establish that a school principal should have known not to delay or suppress the filing of 51A Reports, the law requires more.  More specifically, to deny Gavins the protections of qualified immunity, the Court must find that prohibition to be clearly set forth in existing case law.  Because the Court has been unable to find a consensus of authority establishing that affirmative acts by school officials that lead to or enhance the danger of peer-on-peer sexual assault violate students' due process right to bodily integrity, the Court must find that she is entitled to qualified immunity and dismiss Count I on that basis.

4.  *Monell* Liability

The Municipal Defendants argue that Plaintiffs have failed to state a Section 1983 claim consistent with the requirements of Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  Under Monell, "a municipality may not be held liable under a theory of respondeat superior for an employee's constitutional violation but it may be held liable when 'execution of [the municipality's] policy or custom . . . inflict[ed] the injury.'"  Thomas v. Town of Chelmsford, 267 F. Supp. 3d 279, 305 (D. Mass. 2017) (quoting Monell, 436 U.S. at 694).

"'A plaintiff can establish the existence of an official policy by,' inter alia, 'showing that the alleged constitutional injury was caused . . . by a person with final policymaking authority.'" Walden v. City of Providence, 596 F.3d 38, 55 (1st Cir. 2010) (quoting Welch v. Ciampa, 542 F.3d 927, 941 (1st Cir. 2008)).  Whether an official has the requisite level of specific policymaking authority is a matter of state law.  Id. at 56.  In Massachusetts, "the school committee in each city or town has policymaking authority."  Thomas, 267 F. Supp. 3d at 306;

see Mass. Gen. Laws ch. 71, § 37 ("The school committee in each city and town . . . shall

establish educational goals and policies for the schools in the district . . . ."). Gavins, as the

principal of the Mission Hill K-8 School, is not a policymaker for the school committee. See

McLaughlin v. City of Lowell, No. CIV.A. 94-5069, 1998 WL 224929, at *13 (Mass. Super. Ct.

Apr. 3, 1998) (Gants, J.) ("In short, the school committee makes policy; the school

superintendent and principals implement those policies.").[3] As the Amended Complaint does not

suggest that any municipal staff who were involved in the alleged misconduct possessed final

policymaking authority for the school committee, Plaintiffs must ground their Monell claim on

the execution of a municipal custom. See Pembaur v. City of Cincinnati, 475 U.S. 469, 481 n.10

(1986) ("A § 1983 plaintiff . . . may be able to recover from a municipality without adducing

evidence of an affirmative decision by policymakers if able to prove that the challenged action

was pursuant to a state 'custom or usage.'").

      There are two requirements to prove a Section 1983 claim based on a municipal custom.

First, the custom "must be attributable to the municipality" such that it is "so well settled and

widespread that the policymaking officials of the municipality can be said to have either actual

or constructive knowledge of it yet did nothing to end the practice." Whitfield v. Melendez-

Rivera, 431 F.3d 1, 13 (1st Cir. 2005) (quoting Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st

Cir. 1989)). "Second, the custom must have been the cause of and 'the moving force behind' the

constitutional violation." Id. (quoting Bordanaro, 871 F.2d at 1156). Evidence of a single

incident of a constitutional deprivation "is insufficient, *in and of itself*, to establish a municipal

'custom or usage' within the meaning of Monell." Mahan v. Plymouth Cty. House of Corr., 64

---

[3] See also Mass. Gen. Laws ch. 71, § 59B ("Principals . . . shall be the educational administrators
and managers of their schools and shall supervise . . . their schools . . . subject to the supervision
and direction of the superintendent); id. § 59 ("A superintendent . . . shall manage the system in a
fashion consistent with . . . the policy determinations of that school committee.").

F.3d 14, 16–17 (1st Cir. 1995). Evidence of "multiple incidents of misconduct" that suggest a "systemic pattern of activity," however, may support an inference of a municipal custom. See Town of Wayland, 179 F. Supp. 3d at 172–73 (citing Kibbe v. City of Springfield, 777 F.2d 801 (1985); Baron v. Suffolk Cty. Sheriff's Dep't, 402 F.3d 225 (2005)). Moreover, a municipality's failure to train its employees can be an actionable custom under Section 1983. See City of Canton v. Harris, 489 U.S. 378, 388–90 (1989). "Triggering municipal liability on a claim of failure to train requires a showing that municipal decisionmakers either knew or should have known that training was inadequate but nonetheless exhibited deliberate indifference to the unconstitutional effects of those inadequacies." Haley v. City of Bos., 657 F.3d 39, 52 (1st Cir. 2011) (citations omitted).

Here, Plaintiffs claim that school officials had a custom of discouraging and delaying the filing of 51A Reports about sexual assaults committed by students. Am. Compl. ¶¶ 18–19. Plaintiffs allege multiple incidents of sexual assault committed by students, including sexual assaults committed by A.J. on ten classmates, that spanned over three school years. Id. ¶¶ 17, 20–26. In addition, a liberal reading of the Amended Complaint reveals that school staff learned of many sexual assaults committed by A.J. and were required to file 51A Reports to DCF in connection with them, but as a result of the school custom, only one 51A Report was ever filed and, in retaliation for filing that Report, a school teacher was fired. See id. ¶¶ 16, 18–19. Further, Plaintiffs allege that there was a municipal custom of inadequate training of school staff on the proper filing of 51A Reports. Id. ¶ 19. Plaintiffs claim that these customs were the moving force behind the violation of B.G.'s and A.R.'s constitutional right to bodily integrity. Id. ¶¶ 41–42.

The existence of a municipal custom that discouraged the filing of 51A Reports is a

reasonable inference to be drawn from Plaintiffs' allegations of a systematic pattern of school

staff failing to submit 51A Reports to DCF following multiple sexual assaults.  Given that no

51A Reports were filed in connection with known sexual assaults by A.J. on nine children other

than B.G., the Court can also infer that school staff were insufficiently trained on the filing of

such Reports and that this training inadequacy amounted to deliberate indifference in light of

A.J.'s known pattern of sexual assaults.  The Amended Complaint could be more fulsome with

respect to the alleged municipal customs, and Plaintiffs will have to overcome significant issues

of proof if they are to prevail at trial.  Nonetheless, the Court finds that, at this stage, Plaintiffs

have adequately pleaded municipal liability for violations of B.G.'s and A.R.'s right to bodily

integrity based on the role that municipal customs allegedly played in the constitutional

violations, and they are entitled to discover and present evidence on Count II.  The Municipal

Defendants' motion to dismiss Count II is denied.[4]

        **B.**       **Massachusetts Civil Rights Act Claim (Count III, Against Gavins)**

Gavins argues that the claim based on the Massachusetts Civil Rights Act ("MCRA"),

Mass. Gen. Laws ch. 12, § 11I should be dismissed.  "To establish a claim under the [MCRA], 'a

plaintiff must prove that (1) the exercise or enjoyment of some constitutional or statutory right;

(2) has been interfered with, or attempted to be interfered with; and (3) such interference was by

threats, intimidation, or coercion.'"  Glovsky v. Roche Bros. Supermarkets, 17 N.E.3d 1026,

1035 (Mass. 2014) (quoting Currier v. Nat'l Bd. of Med. Exam'rs, 965 N.E.2d 829, 837–38

---

[4] Plaintiffs also allege that the Municipal Defendants' failure to supervise A.J. caused B.G. and
A.R. to suffer constitutional violations.  Supervisory liability cannot be predicated on actions by
students, however, because "it is plain that a student does not have a supervisor-subordinate
relationship with a teacher or school administrator," and because "a student's actions cannot
create the underlying constitutional infringement to support supervisory liability because of the
lack of state action."  Thomas v. Town of Chelmsford, 267 F. Supp. 3d 279, 303 (D. Mass.
2017).

(Mass. 2012)). "The MCRA is the state 'counterpart' to Section 1983 and, in general, is coextensive therewith." Mangual v. City of Worcester, 285 F. Supp. 3d 465, 471 (D. Mass. 2018). "The primary difference is that to succeed on an MCRA claim, a plaintiff must also show that the violation of rights occurred 'by threats, intimidation or coercion.'" Id. (quoting Bally v. Northeastern Univ., 532 N.E.2d 49, 52 (Mass. 1989)). For purposes of the act, "threats, intimidation or coercion" are defined as follows:

> a 'threat' consists of 'the intentional exertion of pressure to make another fearful or apprehensive of injury or harm;' 'intimidation' involves 'putting in fear for the purpose of compelling or deterring conduct;' and 'coercion' is 'the application to another of such force, either physical or moral, as to constrain him [or her] to do against his [or her] will something he [or she] would not otherwise have done.

Glovsky, 17 N.E.3d at 1035 (quoting Haufler v. Zotos, 845 N.E.2d 322, 335 (Mass. 2006)).

Gavins contends that because the Amended Complaint does not allege that she threatened, intimidated, or coerced the Plaintiffs, the MCRA claim must be dismissed. [ECF No. 32 at 7–8]. Plaintiffs respond that coercion may be alleged where a defendant maintains "absolute control and access" over the environment at issue, and that Gavins' complete control over the school surroundings and the vulnerability of B.G. and A.R. created a coercive environment through which she interfered with their rights. [ECF No. 39 at 9]. Further, Plaintiffs contend that Gavins interfered with the constitutional rights of B.G.'s and A.R.'s parents using threats, intimidation, and coercion by denying A.R.'s parents' request to have her transferred to another school and by interfering with B.G.'s and A.R.'s parents' attempts to speak out against the school administration. Am. Compl. ¶ 31.

The Court finds that the factual allegations in the Amended Complaint are insufficient to give rise to an inference that Gavins interfered with Plaintiffs' exercise of their constitutional rights through threats, intimidation or coercion. Although elementary school-aged children are

inherently vulnerable, having "complete control" over a school environment is not, itself, coercive within the meaning of the MCRA in the absence of any allegations that Gavins applied "physical or moral force" to B.G. or A.R. "to constrain [them] to do against [their] will something [they] would not otherwise do." Goddard v. Kelley, 629 F. Supp. 2d 115, 128 (D. Mass. 2009).[5] Moreover, even if Gavins' denial of A.R.'s parents' request to transfer her to a different school were somehow coercive, the Amended Complaint does not suggest how that act interfered with the exercise of any constitutional right. Finally, the assertion that Gavins interfered with B.G.'s and A.R.'s parents' attempts to speak out against the school administration is wholly conclusory and devoid of any underlying factual support, and is therefore inadequate to state a claim under the MCRA. Accordingly, Gavins' motion to dismiss Count III is granted.

C.    **Title IX, 20 U.S.C. § 1681 Claim (Count IV, Against the Municipal Defendants)**

The Municipal Defendants seek dismissal of Plaintiffs' claims based on Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). There are two types of sexual harassment in the educational milieu that may constitute gender-based discrimination actionable under Title IX: (1)

---

[5] Plaintiffs cite to Chao v. Ballista, 772 F. Supp. 2d 337 (D. Mass. 2011) for the proposition that "[c]oercion can be sufficiently alleged based on an environment where the defendant had absolute control and access." [ECF No. 39 at 9]. In Chao, the court denied summary judgment as to an MCRA claim brought by a prisoner who had engaged in a sexual relationship with a guard. Chao, 772 F. Supp. 2d at 360. In finding an inference of coercion sufficient to survive summary judgment, the court cited specific facts in the record beyond the nature of the prison environment, noting that the guard had coerced the plaintiff "with the additional benefit of talking to her children with his cell phone or the privilege of keeping contraband" and the plaintiff understood the guard to have made an implicit "threat of what would happen if she refused" to continue the relationship. Id. Thus, Chao does not support Plaintiffs' contention that the fact of Gavins' control over the school environment, alone, is sufficient to find coercion.

quid pro quo harassment, which is not implicated in this case, and (2) hostile environment harassment, which "covers acts of sexual harassment sufficiently severe and pervasive to compromise or interfere with educational opportunities normally available to students." Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 65 (1st Cir. 2002).

"Student on student harassment can be actionable" under Title IX. Morgan v. Town of Lexington, 823 F.3d 737, 745 (1st Cir. 2016) (citing Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 643 (1999)). "[A] recipient of funding from the United States Department of Education may be liable for damages if 'its deliberate indifference to [student on student] sexual harassment "subjects" its students to harassment.'" Porto v. Town of Tewksbury, 488 F.3d 67, 72 (1st Cir. 2007) (quoting Davis, 526 U.S. at 644) (alterations omitted). "[A] funding recipient is not liable under Title IX for all student-on-student sexual harassment." Id. Rather, "the plaintiff must show (1) that he or she was subject to 'severe, pervasive, and objectively offensive' sexual harassment by a school peer," "(2) that the harassment caused the plaintiff to be deprived of educational opportunities or benefits," (3) that the school "knew of the harassment, (4) in its programs or activities and (5) it was deliberately indifferent to the harassment such that its response (or lack thereof) is clearly unreasonable in light of the known circumstances." Id. at 72–73. If the school "takes timely and reasonable measures to end the harassment, it is not liable under Title IX for prior harassment," but "if it learns that its measures have proved inadequate, it may be required to take further steps to avoid new liability." Wills v. Brown Univ., 184 F.3d 20, 26 (1st Cir. 1999) (citing Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 285–88 (1998)).

First, citing no case law, the Municipal Defendants argue that Count IV must be dismissed because Plaintiffs have not sufficiently alleged that B.G. or A.R. was subject to severe

or pervasive harassment, because "even if you take [Plaintiffs'] First Amended Complaint at face value, B.G. was allegedly sexually assaulted once and A.R. was allegedly sexually [assaulted] three times by their classmate A.J." [ECF No. 30 at 9]. The Court disagrees that one incident (let alone three incidents) of sexual assault on an elementary school-aged child, as detailed in the Amended Complaint, could never, as a matter of law, constitute severe, pervasive, and objectively offensive harassment. "[A] single instance of peer-on-peer harassment theoretically might form a basis for Title IX liability if that incident were vile enough and the institution's response, after learning of it, unreasonable enough to have the combined systemic effect of denying access to a scholastic program or activity." Fitzgerald v. Barnstable Sch. Comm., 504 F.3d 165, 172–73 (1st Cir. 2007), rev'd on other grounds, 555 U.S. 246 (2009); see also Davis, 526 U.S. 629, 652 (1999) (noting that "in theory, a single instance of sufficiently severe one-on-one peer harassment" could be "serious enough to have the systemic effect of denying the victim equal access to an educational program or activity"). At this early stage in the litigation, Plaintiffs have alleged sufficient facts from which the Court can infer that the sexual assaults by A.J. "had a concrete, negative effect on [B.G.'s and A.R.'s] ability to receive an education." Davis, 526 U.S. at 654.

Second, the Municipal Defendants argue that neither B.G. or A.R. were deprived of any educational benefit. [ECF No. 30 at 9]. The Amended Complaint alleges that, following A.J.'s assault on B.G., he continued to interact with her at school, causing B.G. to relive the trauma of her assault and depriving B.G. of her education. Am. Compl. ¶ 21. Further, the Amended Complaint alleges that the sexual assaults by A.J. severely disrupted B.G.'s and A.R.'s education and deprived them of educational opportunities and benefits, because they lived in fear of being sexually assaulted again. Id. ¶¶ 30, 50. At the pleading stage, these allegations are sufficient to

survive a motion to dismiss.

Finally, the Municipal Defendants argue that the Court should dismiss Plaintiff's Title IX claim because Plaintiffs have failed to allege that they acted with deliberate indifference. [ECF No. 30 at 8–10]. Specifically, the Municipal Defendants contend Plaintiffs concede that the school filed a 51A Report and moved A.J. to a different classroom following the assault on B.G. [Id. at 9]. Plaintiffs respond that the Amended Complaint alleges deliberate indifference to A.J.'s harassment by asserting that Defendants: were aware of A.J.'s behavior as early as October 2014, although his sexual assaults continued through the 2016-2017 school year; kept A.J. placed in the classroom with his victims; failed to notify school staff of A.J.'s past behavior; refused to provide safety plans for his victims; discouraged formal reporting of the incidents; fired a teacher who filed a 51A Report about A.J.'s assault on B.G.; took no preventive action after school staff members witnessed and reported to their superiors that A.J. sexually assaulted B.G. and A.R. (and others); and failed to provide adequate supervision. [ECF No. 40 at 10].

The Supreme Court has held that a school is deliberately indifferent to student-on-student sexual harassment when its "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." Davis, 526 U.S. at 648. The deliberate indifference standard "demands that a funding recipient be shown to have had actual knowledge of the harassment," which requires that "the official who is informed of the alleged harassment be a person who, at a minimum, has the authority to institute corrective measures." Santiago v. Puerto Rico, 655 F.3d 61, 73–74 (1st Cir. 2011). The Amended Complaint, in multiple respects, lacks critical details as to which school officials learned of A.J.'s harassment, when they acquired that knowledge, and whether those persons had control over his behavior or the authority to take corrective action. Plaintiff's allegations that the school district had knowledge of and failed to remedy the

sustained peer to peer sexual harassment and the repeated battery of children may give rise to liability, although determining which school officials had actual knowledge of the harassment and who exercised authority for the purposes of Title IX will necessarily be a fact-based inquiry.

At a minimum, as described supra, the Court finds that Plaintiffs have plausibly alleged that the Municipal Defendants were deliberately indifferent to A.J.'s assaults based on the allegations that Gavins discouraged staff from filing 51A Reports about A.J.'s sexual assaults and that one teacher was fired in retaliation for filing such a Report. Am. Compl. ¶¶ 18–19; see Stiles ex rel. D.S. v. Grainger Cty., Tenn., 819 F.3d 834, 852 (6th Cir. 2016) ("The deliberate indifference standard used for proving a § 1983 equal protection violation in peer harassment cases is "substantially the same" as the deliberate indifference standard applied in Title IX cases."). If true, these allegations would demonstrate a clearly unreasonable response to A.J.'s sexual assaults by the Municipal Defendants. Accordingly, the motion to dismiss Count IV is denied.

### D.    Negligence Claim (Count V, Against the Municipal Defendants)

A.R. has asserted a negligence claim against the Municipal Defendants. The Municipal Defendants argue that her negligence claim is barred by a provision of the Massachusetts Tort Claims Act ("MTCA") that immunizes a public employer from "any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer." Mass. Gen. Laws ch. 258 § 10(j). "This exception 'eliminates government liability for a public employer's act or failure to act to prevent harm from the wrongful conduct of a third party unless the condition or situation was "originally caused" by the public employer.'" T.K. v. Town of Barnstable, No. 17-cv-11781-DJC, 2018 WL 3748166, at *6 (D.

Mass. Aug. 6, 2018) (quoting Cormier v. City of Lynn, 91 N.E.3d 662, 666 (Mass. 2018)). "For a public employer's conduct to constitute an 'original cause' the public employer must have engaged in an 'affirmative act (not a failure to act)' that 'materially contributed to creating the specific 'condition or situation' that resulted in the harm.'" Hankey v. Town of Concord-Carlisle, 136 F. Supp. 3d 52, 75–76 (D. Mass. 2015) (quoting Kent v. Commonwealth, 771 N.E.2d 770, 775–76 (Mass. 2002)); see also T.K, 2018 WL 3748166, at *6 ("Failure to address the violent or tortious conduct after the fact amounts to failure to mitigate harm, which is barred by § 10(j)." (citations omitted)). "Both the language of § 10(j) and the decisions of [Massachusetts] courts make clear that at least in some circumstances, a public employer's affirmative act can serve as the 'original cause' of a harmful condition or situation, and thus as a basis for liability, even when the harm is effected by 'the violent or tortious conduct of a third person.'" Gennari v. Reading Pub. Sch., 933 N.E.2d 1027, 1030 (Mass. App. Ct. 2010) (citing Bonnie W. v. Commonwealth, 643 N.E.2d 424, 425–27 (Mass. 1994)).

Here, A.R. advances several theories of negligence: that school officials failed to supervise A.R. and keep her safe from A.J.; that Gavins discouraged school staff from filing 51A Reports about A.J.'s assaults; that Gavins instructed staff to refuse to provide a safety plan or respond to requests from A.R.'s parents in the 2015-2016 school year; and that staff assigned A.R. to sit next to A.J. in the 2016-2017 school year, after it was reported that she had previously been assaulted by him. Am. Compl. ¶¶ 18–19, 23–25, 54. Section 10(j) bars A.R.'s claim for negligent supervision because it is "based on the failure to prevent or mitigate a harm, rather than participation in the initial injury-causing circumstance." Pettengill v. Curtis, 584 F. Supp. 2d 348, 366 (D. Mass. 2008) (quoting Armstrong v. Lamy, 938 F. Supp. 1018, 1044 (D. Mass. 1996)). A.R.'s remaining theories, however, allege affirmative acts by school officials. The

causal link between those acts and A.R.'s injuries is not so remote that the Court can find as a matter of law that they are not an "original cause" of her injuries within the meaning of Section 10(j). If there is evidence that those acts in fact occurred and materially contributed to the situation that resulted in A.R.'s harm, and school officials failed to exercise due care, then although A.J.'s assaults on A.R. are arguably the more immediate cause of her injuries, the Municipal Defendants would be subject to liability under the MTCA. Thus, the Municipal Defendants' motion to dismiss Count V is denied.[6]

### E. Loss of Consortium, Mass. Gen. Laws ch. 231, § 85X Claim (Count VI, Against Defendants Gavins, Walsh, and Chang)

Mr. Doe2 and Ms. Doe2 bring claims against Gavins, Walsh, and Chang for loss of consortium pursuant to Mass. Gen. Laws ch. 231, § 85X. Gavins, Walsh, and Chang argue that the loss of consortium claim is deficient because it is a negligence-based claim and the MTCA bars any negligence claims against them. [ECF No. 32 at 9; ECF No. 34 at 4–5; ECF No. 36 at 4–5].

"Massachusetts provides a statutory cause of action for a parent to recover consortium damages when their parental relationship is impacted by serious 'injuries' to a minor or dependent child at the hands of a tortfeasor." Thomas, 267 F. Supp. 3d at 315 (citing Mass. Gen. Laws ch. 231, § 85X). "[A] claim for loss of consortium cannot be supported without an underlying tortious act." Doe v. Bradshaw, No. 11-cv-11593-DPW, 2013 WL 5236110, at *14 (D. Mass. Sept. 16, 2013) (citing Sena v. Commonwealth, 629 N.E.2d 986, 994 (Mass. 1994));

---

[6] The Municipal Defendants also argue that there is "insufficient evidence" to find that they were negligent because "[t]he evidence suggests that Defendant[s] did in fact meet [their] duty of reasonable care to A.R. by taking various measures to address the situation occurring between the students" and "referring the case to the Boston Police Department was not an option." [ECF No. 30 at 10–11]. This argument is a fact-based assertion that goes to the merits of A.R.'s claim and requires factual determinations that are not appropriate at the motion to dismiss stage.

see also <u>Thomas</u>, 267 F. Supp. 3d at 315 (same).  Gavins, Walsh, and Chang are correct that Mr. Doe2 and Ms. Doe2 cannot maintain a loss of consortium claim predicated on negligent acts for which they are immunized by the MTCA.  <u>See</u> <u>Doe v. D'Agostino</u>, 367 F. Supp. 2d 157, 178 (D. Mass. 2005) (finding that negligence-based loss of consortium claims against school officials were barred by the MTCA).  Although the MTCA does not immunize Gavins, Walsh, or Chang for any intentional torts that they commit in their official capacities, Plaintiffs have not asserted any intentional tort claims against them.  Accordingly, Count VI will be dismissed.

## IV.    CONCLUSION

Accordingly, Defendants' motions to dismiss [ECF Nos. 29, 31, 33, and 35] are <u>GRANTED IN PART</u> and <u>DENIED IN PART</u>.  The motions are <u>GRANTED</u> with respect to Counts I (Violation of 42 U.S.C. § 1983 as to Gavins),  Count II (Violation of 42 U.S.C. § 1983 as to Boston Public Schools and City of Boston) to the extent that it asserts a violation of the right to public education, Count III (Violation of the Massachusetts Civil Rights Act), and Count VI (Loss of Consortium).  The motion is <u>DENIED</u> as to all other claims.

**SO ORDERED.**

March 1, 2019                                                      /s/ Allison D. Burroughs
                                                                          ALLISON D. BURROUGHS
                                                                          U.S. DISTRICT JUDGE